UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KURT JOHANSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARK CURRAN, in his official | ) | |
| capacity as SHERIFF OF LAKE | ) | 15 C 2376 |
| COUNTY; DAVID WATHEN, in his | ) | |
| official capacity; LAKE COUNTY, | ) | |
| ILLINOIS; UNKNOWN | ) | |
| CORRECTIONAL OFFICERS; | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| INC.; MARIE TOWNSEND, TRACIE | ) | |
| STEEL, KATIE JOHNSON, KAREN | ) | |
| COUNLEY, in their individual and | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Now before the Court are two motions: (i) a motion to dismiss Plaintiff Kurt
Johansen's ("Johansen") amended complaint pursuant to Federal Rule of Civil
Procedure 12(b)(6) by Defendants Marc Curran ("Curran"), David Wathen
("Wathen"), Terry King ("King"), Timothy Kicklighter ("Kicklighter"), Mike
Wallace ("Wallace"), Patricia Quick ("Quick"), and Lake County, Illinois ("Lake
County") (collectively, "Lake County Defendants"); and (ii) a motion to dismiss

Johansen's amended complaint pursuant to Rule 12(b)(6) by Darius Holmes ("Holmes"), Nickolas Little ("Little"), Latia Russel ("Russel"), Harry Wilson ("Wilson"), Marie Townsend ("Townsend"), Trina Weatherspoon ("Weatherspoon"), Rene Desfassiaux ("Desfassiaux"), Jennifer Bibbiano ("Bibbiano"), Kathleen Woosley ("Woosley"), Natalie Jones ("Jones"), Katie Johnson ("Johnson"), Teresa Frazer ("Frazer"), Leticia Perez ("Perez"), Elizabeth Keller ("Keller"), Charlie Burke ("Burke"), and Dr. Eric Mizuno ("Mizuno"), (collectively, "Wexford Defendants"). For the following reasons, the motions to dismiss are granted in part and denied in part.

## BACKGROUND

For the purposes of the instant motions, the following well-pleaded allegations derived from Johansen's amended complaint are accepted as true. The Court draws all reasonable inferences in favor of Johansen. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

On March 19, 2014, "Johansen was transported to the Lake County Jail from the McHenry County Jail." Dkt. 33, ¶ 15. When Johansen arrived at the Lake County Jail a Wexford Health Sources, Inc. ("Wexford") employee purportedly conducted a "receiving screening and intake mental health assessment." *Id.*, ¶ 18. At the time that Johansen was at the Lake County Jail, Wexford was the contract provider of medical and mental health services to detainees at the Lake County Jail. Johansen allegedly informed the individual who performed the screening and intake assessment that he

suffered from "sleep apnea, depression, anxiety and hypertension, and required medication to control his serious medical conditions." *Id.*, ¶ 16. Johansen claims that while at the Lake County Jail, he informed several Lake County Sheriff's Office employees and several Wexford employees that he suffered from sleep apnea, depression, anxiety, and hypertension and that he required medication to control these medical conditions. Allegedly, all of his requests for the medication that he was provided with while housed at McHenry County Jail were ignored. At some point, Johansen was transferred back to the McHenry County Jail. Then, on April 29, 2014 Johansen was again taken back to the Lake County Jail. *Id.*, ¶ 40. Upon his return to the Lake County Jail, Johansen claims he experienced the same type of treatment, or lack thereof, after repeatedly requesting his prescribed medications. *Id.*, ¶¶ 42-46 Accordingly, Johansen brings a 42 U.S.C. § 1983 denial of medical care claim against each of the individually named Defendants (Count I); a 42 U.S.C. § 1983 failure to intervene claim against each of the individually named Defendants (Count II), a 42 U.S.C. § 1983 *Monell* claim against Curran and Wathen (Count III); a 42 U.S.C. § 1983 *Monell* claim against Wexford (Count IV), and a state law intentional infliction of emotional distress claim (Count V) against each of the individually named Defendants.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "tests the sufficiency of the complaint, not the merits of the case."

*McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. Count I—42 U.S.C. § 1983 Denial of Medical Care (Individual Defendants)

"Section 1983 creates a cause of action against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blossom v. Dart*, 64 F. Supp. 3d 1158, 1161 (N.D. Ill. 2014) (quoting 42 U.S.C. § 1983). "To succeed on an individual capacity claim under 42 U.S.C. § 1983,

[Johansen] must show that the defendants, while acting under the color of state law, personally caused or participated in the alleged constitutional deprivation." *Hoskins v. Dart*, No. 09 CV 5145, 2010 WL 4823065, at *2 (N.D. Ill. Nov. 15, 2010). Johansen's constitutional claims derive from the Due Process Clause of the Fourteenth Amendment, because the alleged constitutional violations occurred while he was a detainee at the Lake County Jail. *Nielsen v. Sheriff of Cook Cnty.*, No. 15 C 11241, 2016 WL 1161328, at *2 (N.D. Ill. Mar. 23, 2016). The Due Process Clause of the Fourteenth Amendment "applies essentially the same deliberate indifference analysis to detainees as the Eighth Amendment does to inmates." *Id.* (quoting *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014)).

"A plaintiff claiming a constitutional violation under § 1983 for denial of medical care must meet both an objective and a subjective component." *Id.* The plaintiff must show: (i) "that his medical condition was objectively serious;" and (ii) "that the defendant officials had a sufficiently culpable state of mind—that their 'acts or omissions [were] sufficiently harmful to evidence deliberate indifference.'" *Pittman*, 746 F.3d at 775 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The subjective component of a deliberate indifference claim requires that the prison official knew of 'a substantial risk of harm to the inmate and disregarded the risk.'" *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Medical malpractice does not constitute deliberate indifference. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Thus,

deliberate indifference means more than negligent, but less than purposeful. *Id*. "The point between those two poles lies where 'the official knows of and disregards an excessive risk to inmate health and safety' or where 'the official [is] both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] the inference." *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

## A. Lake County Defendants

In the instant matter, the Lake County Defendants concede that Johansen suffered from a serious medical condition; however they dispute whether Johansen has sufficiently pleaded facts that demonstrate deliberate indifference. Dkt. 37, p. 4. Moreover, the Lake County Defendants contend that "the factual allegations within the Amended Complaint belie the legal conclusions in Counts I and II." *Id*. In response to both the Lake County Defendants and the Wexford Defendants, Johansen spends four pages articulating the pleading standard set forth in *Twombly* and *Iqbal*. Johansen appears to emphasize the pleading standard to support his argument that "specificity in pleading was neither required nor even desirable" because "the instant case is based upon a simple, clear-cut, failure to provide medical attention to a pretrial detainee." Dkt. 50, p. 6. Johansen also argues that the facts as alleged, "are more than sufficient to place each of these individuals 'on notice' of the claims being made against them," and that pursuant to Federal Rule of Civil Procedure 8(a)(2)'s ("Rule 8(a)(2)") "'short and plain statement' requirement" he did not need "to list each and

every act creating culpability for each and every individually named defendant who came into contact with [him] while he was present in the Lake County Jail." *Id.*, p. 8.

Johansen is correct that "the more complex the claim, the greater the level of specificity required for the story to hold together." *Id.*, p. 6 (citing *Swanson v. Citbank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). However, Count I, as alleged against the Lake County Defendants, fails to provide sufficient "details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. In fact, many of the allegations negate Johansen's story that Lake County Defendants Quick, Kicklighter, Wallace, and King were deliberately indifferent to his serious medical needs. Accordingly, for the reasons explained below, Count I is dismissed as to Defendants Quick, Kicklighter, Wallace, and King[1]. Defendants Curran and Wathen are sued in their official capacities and the amended complaint lacks allegations regarding their personal involvement as to Count I and Count II. Thus, they are dismissed from Count I and Count II.

Johansen claims that Quick was deliberately indifferent to his serious medical needs when she reviewed his March 25, 2014 inmate grievance request for his prescribed medications on April 5, 2014,[2] and subsequently responded, "Your grievance will be forwarded to Medical Staff. You will receive a response from

---

[1] Quick, Kicklighter, and Wallace are Lake County Sheriff's Corrections Officers. King is a former Laker County Sheriff's Sergeant.

[2] Paragraph one of the amended complaint states, "[t]his action seeks damages under federal law . . . for defendants' actions of March 2014 through April 2014." Thus, the Court assumes that the allegation that Defendant Quick did not review Johansen's March 25, 2014 inmate grievance until April 5, *2015*, Dkt. 33, ¶ 36, is a typo and should state April 5, *2014*.

them."  Dkt. 33, ¶¶ 29, 36.  The only other allegation with respect to Quick states that she is one of the officers whose "knowledge of and/or culpability for the deprivations of Plaintiff's constitutional rights will be revealed during the course of fact discovery in this matter . . ."  *Id.*, ¶ 10.

Johansen contends that "'nonmedical' jail officials can 'be chargeable with  . . . deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner,'" and that "[n]on-medical defendants cannot simply ignore an inmate's plight."  Dkt. 50, p. 8 (citations omitted).  However, there are no allegations that Quick engaged in such conduct.  Indeed, the allegations against Quick contradict Johansen's contention that "his cries for help from the individual defendants went ignored."  Dkt. 50, p. 9; *see Greeno*, 414 F.3d at 656 ("we can see no deliberate indifference given that [the non-medical defendant] investigated the complaints and referred them to the medical providers who could be expected to address [the plaintiff's] concerns"); *cf. Moore v. Abernathy*, 11 C 3487, 2015 WL 222685, at *4 (N.D. Ill. Jan. 15, 2015) (plaintiff's allegations that defendant knew plaintiff's medical needs were not being met and did nothing were sufficient to state a deliberate indifference claim).  Johansen failed to allege that Quick acted with deliberate indifference to his serious medical needs.  Thus, Count I is dismissed as to Quick.

Likewise, the Court agrees with the Lake County Defendants that Johansen's allegations against Kicklighter fail to demonstrate that he acted with deliberate

indifference to Johansen's serious medical needs. Johansen relies on the same arguments that he made against Quick to establish that Kicklighter, was deliberately indifferent. Nevertheless, as was true of the allegations against Quick, the allegations as to Kicklighter reveal that after he reviewed Johansen's March 25, 2014 inmate grievance, he did not ignore Johansen's "plight." Instead, Kicklighter placed Johansen on suicide watch. Dkt. 33, ¶ 30. Kicklighter also informed Wexford Defendants Weatherspoon and Jordan-Pough about Johansen's "concerns about being off his psych medications." *Id*., ¶¶ 29, 31. These allegations contradict Johansen's assertion that Kicklighter ignored the substantial risk of harm that Johansen faced. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"). Consequently, Johansen failed to allege that Kicklighter acted with deliberate indifference to his serious medical needs. Accordingly, Count I is dismissed as to Kicklighter.

According to Johansen, Wallace is among the Lake County Defendants "whose "knowledge of and/or culpability for the deprivations of Plaintiff's constitutional rights will be revealed during the course of fact discovery in this matter . . ." Dkt. 33, ¶ 10. Johansen also claims that Wallace interviewed him on March 20, 2014 and April 30, 2014 for housing classification purposes. Dkt. 33, ¶¶ 25, 42. During both interviews, Johansen informed Wallace "that he suffered from depression and anxiety, and was currently taking medications." *Id*. Consequently, Wallace indicated on the

"classification form 'Depress/Anxiety,' 'Med/Aware.'" *Id.* Johansen does not assert that Wallace had any other contact with him after Wallace completed the housing classification interviews. While these allegations demonstrate that Wallace was aware of Johansen's serious medical needs, they fail to illustrate that Wallace disregarded that risk. *See Greeno*, 414 F.3d at 653. Thus, Count I is dismissed as to Wallace.

As to King, Johansen asserts that he is among the "correctional officers whose knowledge of and/or culpability for the deprivations of Plaintiff's constitutional rights will be revealed during the course of fact discovery in this matter." Dkt. 33, ¶ 10. This assertion fails to illustrate how King caused or participated in the alleged constitutional deprivation. *See Sain v. Budz*, No. 05 C 6394, 2006 WL 539351, at *2 (N.D. Ill. Mar. 03, 2006). Moreover, there are no factual allegations that King was aware of "a substantial risk of harm to [Johansen] and disregarded that risk." *Edwards*, 478 F.3d at 831(quoting *Greeno*, 414 F.3d at 653). Accordingly, absent any allegations of King's personal involvement or that he knew of a substantial risk of harm to Johansen and disregarded it, the claim for denial of medical treatment against King must be dismissed.

### B. Wexford Defendants

Wexford Defendants Desfassiaux, Bibbiano, Woosley, Russel, Frazer, Jones[3], Keller, Burke, Holmes, Wilson, and Little contend that the amended complaint is

---

[3] There are two Defendants named in the amended complaint, both of whom have the last name "Jones." However, the Wexford Defendants' motion to dismiss Johansen's amended complaint

devoid of factual allegations demonstrating their personal involvement in the purported constitutional deprivation. Dkt 49, p. 4. Absent personal involvement, these individuals argue, that they could not be "subjectively aware" of Johansen's medical needs. *Id*. Wexford Defendants Townsend, Johnson, Weatherspoon, and Perez assert that the allegations demonstrating their minimal involvement with Johansen do not amount to deliberate indifference to Johansen's serious medical needs. *Id*., p. 6. Wexford Defendant Mizuno maintains that Johansen has pleaded himself out of a claim with respect to Count I. *Id*.

In response to the Wexford Defendants' motion to dismiss Counts I and II, Johansen relies on the same arguments he made against the individual Lake County Defendants in defense of Counts I and II. Johansen is correct that pursuant to Rule 8(a)(2) he is required to provide "only 'a short and plain statement of the claim showing that'" he is entitled to relief. *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2)). However, while it is permissible "at the pleading stage to direct an allegation against multiple defendants," *Chatman v. City of Chi.*, 14 C 2945, 2015 WL 1090965, at *4 (N.D. Ill. Mar. 10, 2015), in order "[t]o impose individual liability under § 1983, [Johansen] must allege that each defendant caused or participated in the constitutional deprivation." *Sain*, 2006 WL 539351, at *2. Accordingly, as was true with the Lake County Defendants, any claims brought against the Wexford Defendants, in their individual capacities, require allegations that demonstrate that

only includes "Natalie Jones" and does not include "Antoinette Jones." Thus, for purposes of this opinion, any reference to "Defendant Jones" pertains to Defendant Natalie Jones.

they were "personally involved in the particular deprivation alleged or that the deprivation occurred at the defendant's direction or with the defendant's knowledge and consent." *Neely v. Randel*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013). To satisfy the personal involvement requirement of a deliberate indifference claim "direct participation is not necessary, though 'there must at least be a showing that the [official] acquiesced in some demonstrable way in the alleged constitutional violation.'" *Watkins v. Ghosh*, 11 C 1880, 2014 WL 840949, at *5 (N.D. Ill. Mar. 4, 2014) (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)).

Johansen sued Wexford Defendants Holmes, Wilson, and Little in their official capacities. Dkt. 33, ¶ 13. "[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Ford v. Wexford Health Sources, Inc.*, No. 12 C 4558, 2013 WL 474494, at *8 (N.D. Ill. Feb. 7 2013) (quoting *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011)). Thus, the claims against Holmes, Wilson, and Little "in their official capacities is redundant and unnecessary" because "Wexford is already a named Defendant." *Id.* (citing *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008)) ("[a]n official capacity suit is tantamount to a claim against the government entity itself"). Consequently, Holmes, Wilson, and Little are dismissed from Counts I and II.

As to the remaining Wexford Defendants now moving to dismiss the amended complaint, Johansen makes the following general allegations against them: (i) they

"were agents or employees of Wexford Health Sources;" (ii) they were responsible for providing "evaluation, care, treatment and medication to detainees incarcerated at the Lake County Jail;" (iii) they went to Johansen's housing unit, and while there, Johansen "inquired about his prescribed medication, but was not given any;" and (iv) they violated Johansen's constitutional rights when they ignored his requests for his prescribed medications. Dkt. 33, ¶¶ 14, 26, 43, 44, 46. Based on these allegations Johansen has failed to establish that Wexford Defendants Desfassiaux, Bibbiano, Woosley, Russel, Frazer, Jones, Keller, and Burke "acquiesced in some demonstrable way in the alleged constitutional violation." *Watkins*, 2014 WL 840949, at *5. Nor has he pleaded sufficient factual content to show that these Wexford Defendants had knowledge of or involvement in Johansen's medical treatment. *Neely*, 2013 WL 3321451, at *4 (Plaintiff's allegation that "Dr. Mahon, as medical director, had overall responsibility for medical care at Stateville is insufficient without more to amount to a plausible allegation of her personal involvement . . ."). Thus, Desfassiaux, Bibbiano, Woosley, Russel, Frazer, Jones, Keller, and Burke are dismissed from Count I. They are also dismissed from Count II as there are no allegations of personal involvement, with respect to these Wexford Defendants, to sustain Johansen's 42 U.S.C. § 1983 failure to intervene claim.

With respect to Wexford Defendants Townsend, Perez, Johnson and Weatherspoon, Johansen included additional factual allegations that lead to the reasonable inference that these individual Wexford Defendants were aware of his

serious medical needs and were personally involved in the purported constitutional deprivation. Dkt. 33, ¶ 23 (Townsend reviewed Johansen's "completed receiving screening and intake mental health assessment forms, which indicated [his] current medications"); *id.*, ¶¶ 40-41 (Perez performed Johansen's "receiving screening and intake mental health assessment" on April 29, 2014); *id.* ¶ 28 (on March 24, 2014, Johansen told Johnson that he needed his prescribed medications); *id*. at ¶ 31 (on March 25, 2014, Kicklighter told Weatherspoon about Johansen's "concerns from being off his psych medications.") Whether Townsend, Perez, Johnson and Weatherspoon intentionally or deliberately disregarded Johansen serious medical needs is a question for summary judgment. *See Arrieta v. Wexford Health Sources, Inc.*, No. 13 C 6765, 2015 WL 1326395, at *3 (N.D. Ill. Mar. 20, 2015). Thus, Townsend, Perez, Johnson and Weatherspoon's motion to dismiss Count I is denied.

Dr. Mizuno contends that Johansen "has pled himself out of his [denial of medical care] claim" by alleging that Dr. Mizuno performed an examination on Johansen on March 27, 2014 and prescribed Johansen certain medications. Dkt. 49, p. 6-7. While "a plaintiff may plead himself out of court by alleging facts showing that he has no legal claim," the fact that Dr. Mizuno reviewed and singed Johansen's Medical History and Physical Assessment on March 27, 2014 does not establish that Johansen has failed to sufficiently allege his deliberate indifference claim against Dr. Mizuno. *See Ford*, 2013 WL 474494, at *7; *see also Neely*, 2013 WL 3321451, at *5 (allegations that plaintiff received some medical attention does not defeat his 42

U.S.C. § 1983 claims); *and Hicks v. Young*, No 10 C 38, 2011 WL 5507379, at *4 (N.D. Ill. Nov. 9, 2011) ("The fact that a prisoner has received some medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by 'blatantly inappropriate' treatment, or by 'woefully inadequate action,' as well as by no action at all") (internal citations omitted). Here Johansen "has pleaded facts sufficient to infer [Dr. Mizuno's] plausible involvement in" his medical care. *See Ford*, 2013 WL 474494, at *7. Whether Johansen will be able to establish that Dr. Mizuno intentionally or deliberately disregarded Johansen's serious medical needs is a question for summary judgment. *Arrieta*, 2015 WL 1326395, at *3; *see also Green v. Kaupas*, No. 13 C 50215, 2014 WL 3725855, at *5 (N.D. Ill. July 28, 2014) ("[d]iscovery will reveal, among other things, precisely what treatment [defendants] provided to Green while he was at the Will County Jail and why they believed that treatment was appropriate. The Court can then evaluate whether their treatment was 'so far out of bounds that it was blatantly inappropriate or not even based on medical judgment.'") (internal citation omitted).

## II. Count II—42 U.S.C. § 1983 Failure to Intervene (Individual Defendants)

Johansen also alleges that the individual Lake County and Wexford Defendants violated his constitutional rights by failing to intervene. "The Seventh Circuit acknowledges a 'failure to intervene' basis for a constitutional violation under the Eighth Amendment." *Watkins*, 2014 WL 840949, at *3 (quoting *Harper v. Albert*,

400 F.3d 1052, 1064 (7th Cir. 2005)).  To establish a failure to intervene claim a plaintiff must plead the following: "(i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result."  *Id*.  "Failure to intervene liability is not limited to the contexts of excessive force cases," but "it is 'not so broad as to place a responsibility on every government employee to intervene in the acts of all other government employees.'"  *Id*. (quoting *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003)).  However, "there must be some particular connection or relationship between the government employees or entities such that the duty to intervene arises."  *Id*.

## A. Lake County Defendants

The requirements for a failure to intervene claim against Lake County Defendants Quick, Kicklighter, and Wallace have not been satisfied as there are no allegations that suggest that they failed to take reasonable steps to prevent harm to Johansen.  Indeed, the allegations demonstrate that Quick, Kicklighter, and Wallace engaged in conduct to prevent harm to Johansen.  As to King, there are no factual allegations regarding his personal involvement in the constitutional deprivation or his knowledge of any unconstitutional conduct.  Thus, Quick, Kicklighter, Wallace, and King are dismissed from Count II.

## B. Wexford Defendants

For the reasons explained above Wexford Defendants Desfassiaux, Bibbiano, Woosley, Russel, Frazer, Jones, Keller, Burke, Holmes, Wilson, and Little are dismissed from Count II. The remaining moving Wexford Defendants contend that the amended complaint fails to illustrate their knowledge of any alleged unconstitutional conduct, their inability to prevent Johansen harm, and their knowledge of Johansen's pain due to their failure to take steps to prevent further harm. Dkt. 49, p. 9. However, based on Johansen's allegations that: (i) Townsend reviewed his receiving screening and intake mental health assessment form, Dkt. 33, ¶ 23; (ii) Perez performed his receiving screening and intake mental health assessment, on April 29, 2014, *id.*, ¶ 40; (iii) Johnson was informed, on March 24, 2015, that Johansen "needed his prescribed antidepressant medications," *id.*, ¶ 28; (iv) Kicklighter told Weatherspoon of Johansen's concerns about being off his prescribed medications, on March 25, 2014, *id.*, ¶ 31; and (v) Dr. Mizuno reviewed and signed Johansen's Medical History and Physical Assessment, on March 27, 2014, *id.*, ¶ 34, it is plausible that these individuals knew of the unconstitutional conduct. Whether these Defendants had a realistic opportunity to prevent the harm is a fact issue that cannot be resolved at the pleading stage. *See Young v. City of Chi.*, No. 13 C 5651, 2014 WL 7205585, *4 (N.D. Ill Dec. 18, 2014). Accordingly, Townsend, Perez, Johnson, Weatherspoon, and Mizuno's motion to dismiss Johansen's claim for failure to intervene is denied.

### III. Count III—42 U.S.C. § 1983 *Monell* Claim against Curran and Wathen

In Count III, Johansen asserts that Curran and Wathen, in their official capacities, violated his constitutional rights. Johansen's official capacity allegations against Curran and Wathen "are simply a way of pleading an action against an entity of which the officer is an agent." *Hill v. Dart*, No. 15 C 113, 2015 WL 5610971, at *2 (N.D. Ill. Sept. 22, 2015) (quoting *Crockwell v. Dart*, No. 13 C 4880, 2013 WL 6796788, at *2) (N.D. Ill. Dec. 23, 2013)). However, a "plaintiff cannot simply hold a municipality vicariously liable for the actions of its employees." *Listenbee v. City of Harvey*, No. 11 C 03031, 2013 WL 5567552, at *3 (N.D. Ill. Oct. 9, 2013) (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Thus, to establish that the Lake County Sheriff's Office is liable for unconstitutional conduct under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), Johansen must plead facts that create an inference that he suffered "a constitutional injury resulting from a municipal policy, custom, or practice." *Lewis v. Cnty. of Cook*, No. 10 C 1313, 2011 WL 839753, at *13 (N.D. Ill. Feb. 24, 2011). Johansen must assert that the municipal policy, custom, or practice, "not only caused the constitutional violation, but was the moving force behind it." *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792 (N.D. Ill. 2013) (quoting *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). "An official policy or custom may be established by means of an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or through

the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs*, 675 F.3d 650, 675 (7th Cir. 2012).

In the instant matter, Johansen asserts that "Defendants Curran and Wathen had notice of a widespread practice" of denying Lake County detainees with serious medical conditions "access to proper or sufficient medication or medical attention." Dkt. 33, ¶ 70. Johansen also claims that Curran and Wathen supported this widespread practice by "failing to adequately train, supervise, and control Correctional Officers and Medical Care Providers and by failing to adequately punish and discipline prior instances of misconduct." *Id*. at ¶ 71(a). As a result of these allegations, the Lake County Defendants assumed that Johansen was proceeding with his *Monell* claim based on the theory that a widespread practice caused the constitutional injury. Dkt. 37, p. 9. However, in his response brief Johansen argues that he "intends to proceed under all three [ ] theories." Dkt. 50, p. 11. While the Court tends to agree with the Lake County Defendants' interpretation of the amended complaint, we consider Johansen's assertion consistent with the factual allegations in his amended complaint. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (in some instances a plaintiff opposing a Rule 12(b)(6) motion to dismiss "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings.") Thus, we will address Johansen's *Monell* claim under each theory.

## A. Express Policy

Johansen contends that the factual allegations demonstrate "that the County and its contract medical provider had a formal policy in place designed to reduce or even eliminate the provision of necessary prescription medications for pretrial detainees— all for the purpose of saving money or creating profits." Dkt. 50, p. 11. The amended complaint states that Curran and Wathen "[a]llowed medical operations at the Jail to be performed under a contractual agreement that created a financial disincentive for jail and medical staff to provide necessary prescription medications to inmates;" and "failed to contract for medical and mental health services in a manner so that financial incentives would not affect the provision of medical care and medications to inmates." Dkt. 33, ¶¶ 69(a), 71(b). While "[a] *Monell* claim is often alleged in a conclusory fashion," a plaintiff is still required to include factual content that describes the existence of an express policy that violated his constitutional rights. *See Klein v. Curran*, No. 13 CV 5191, 2014 WL 5023486, at *3 (N.D. Ill. Oct. 7, 2014). Here, the amended complaint lacks factual content that describes the existence of an express policy. Thus, the Court cannot reasonably infer a plausible *Monell* claim based on an express policy.

## B. Widespread Practice

"With respect to the existence of a 'widespread custom or practice,' the Seventh Circuit has not adopted any bright line rules in defining that term, except that the allegedly unconstitutional conduct 'must be more than one instance.'" *Bless v.*

*Cook Cnty. Sheriff's Office*, 13-cv-4271, 2015 WL 890370, at *5 (N.D. Ill. Feb. 27, 2015) (quoting *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)).  A plaintiff must show "that there is a policy at issue rather than just a random event."  *Id*. at *7.  A plaintiff can establish that there is "a policy at issue" by demonstrating that there is an implicit policy, a gap in expressed policies, or a series of violations.  *Id*.  Johansen attempts to establish a widespread practice by alleging that there have been multiple instances where "detainees with serious medical conditions . . . were routinely denied access to proper or sufficient medication or medical attention."  Dkt. 33, ¶ 70.

Johansen argues that Curran and Wathen: (i) supported an unwritten "custom or practice of allowing deficient medical care to be provided to pretrial detainees that caused" Johansen's constitutional violation; (ii) failed to take any action until after Johansen left the Lake County Jail, despite their  "knowledge of deficiencies in the medical care provided to detainees" by Wexford; and (iii) created "'de facto' policies of failing to adequately" train, supervise, discipline, and correct corrections officers and medical providers.  Dkt. 50, p. 11.  To support these allegations, Johansen claims that there have been other incidents at the Lake County Jail whereby detainees were routinely denied access to proper or sufficient medication or medical attention.  Dkt. 33, ¶ 70(a).  However, as previously stated in this Court's Order from August 20, 2015, these allegations "fail to elucidate any policy or practice led by Curran and Wathen (or otherwise) of depriving detainees of medications or medical assistance."

*Johansen v. Curran*, 15 C 2367, 2015 WL 4978702, at *3 (N.D. Ill. Aug. 20, 2015). Moreover, Johansen's assertion that the Lake County Sheriff's Office sent a letter to Wexford on March 5, 2014 complaining of the deficiencies in Wexford's performance undermines his allegations that Curran and Wathen supported an unwritten custom or practice of allowing deficient medical care to be provided to pretrial detainees and failed to take any action until after Johansen left the Lake County Jail. Dkt. 33, ¶ 70(e). Thus, Johansen's *Monell* claim based on a widespread practice or policy fails.

Likewise Johansen's failure to train claim is deficient. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Macaluso v. City of Chi.*, No. 15 CV 1739, 2015 WL 7008140, at *4 (N.D. Ill. Nov. 12, 2015) (quoting *Connick*, 563 U.S. at 61). "Courts routinely dismiss conclusory failure-to-train claims." *Id*. In the instant matter, Johansen's failure to train claim is based on "factually-unsupported, boilerplate allegation[s] that cannot survive a motion to dismiss." *Maglaya v. Kumiga*, No. 14-cv-3619, 2015 WL 4624884, at *5 (N.D. Ill. Aug. 3, 2015).

**C. Actions of an Individual with the Authority to Make Final Policy Decisions**

The amended complaint does not lead to the reasonable inference that Curran and Wathen established a policy or practice that violated Johansen's constitutional rights. Indeed, the factual allegations demonstrate that the Lake County Sheriff's Office expressed concerns about Wexford's performance as demonstrated by its

March 5, 2014 letter to Wexford. This assertion undermines Johansen's claim that Curran and Wathen established and supported a policy or practice that denied detainees access to medication and proper medical care. Moreover, as this Court previously recognized, "[l]ike the litany of 'failing to' allegations rejected in *McCauley*, Johansen's allegations similarly lack actual content sufficient to infer that Curran and Wathen established a policy or practice that violated Johansen's constitutional rights." *Johansen*, 2015 WL 4978702, at \*2 (citing *McCauley v. City of Chi.*, 671 F.3d 611, 618-19 (7th Cir. 2011)). Accordingly, the Court cannot reasonably infer a plausible *Monell* claim based on the actions of Curran and Wathen.

## IV. Count V—State Law Intentional Infliction of Emotional Distress Claim (**Lake County and Wexford Defendants, individually and jointly**)

A combination of the Lake County Defendants and the Wexford Defendants move to dismiss Count V on the basis that the amended complaint lacks factual allegations that demonstrate that they engaged in extreme and outrageous conduct or that they possessed the requisite intent to cause emotional distress when responding to Johansen's medical needs. Dkt. 37, p. 13; Dkt. 49, p. 12. Johansen did not respond to these arguments. Failure to respond to an argument results in waiver. *See Bonte v. United States Bank, N.A.*, 642 F.3d 461, 466 (7th Cir. 2010). Johansen's failure to respond operates as a concession to Defendants arguments in Count V and consent to the dismissal of Count V. Accordingly, Johansen has waived his intentional infliction of emotional distress claim.

## CONCLUSION

For the aforementioned reasons, the Lake County Defendants' motion to dismiss [36] and the Wexford Defendants' motion to dismiss [49] are granted in part and denied in part, as follows: the Lake County Defendants' motion to dismiss Counts I, II, III and V is granted; Wexford Defendants Holmes, Wilson, Little, Desfassiaux, Bibbiano, Woosley, Russel, Frazer, Jones, Keller, and Burke are dismissed from Counts I and II; the Wexford Defendants' motion to dismiss Count V is granted. All other motions are denied. It is so ordered.


_____
Charles P. Kocoras
United States District Judge

Dated: 5/10/2016