# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KURT JOHANSEN,<br><br>Plaintiff,<br><br>v.<br><br>MARK CURRAN, et al.,<br><br>Defendants. | Case No. 15 cv 02376<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Katie Johnson's motion to reconsider the Court's summary judgment ruling issued on February 22, 2019. (Dkt. 109) For the reasons that follow, Johnson's motion (Dkt. 111) is denied.

## BACKGROUND

A detailed recitation of the factual and procedural background at summary judgment can be found in the Court's February 22, 2019 opinion. (Dkt. 109) Recapping briefly, Plaintiff Kurt Johansen brought several claims under 42 U.S.C. § 1983 against various Defendants. Relevant here is Johansen's inadequate medical care claim against Katie Johnson, a Wexford social worker.

Johansen is a former pretrial detainee who was primarily detained in McHenry County Jail ("McHenry"). He was transferred and detained at Lake County Jail ("Lake County") from March 19, 2014 to April 7, 2014. Johansen's transfer to Lake County was unexpected and occurred without any medical transfer paperwork from

1

McHenry. Defendant Wexford was a contract provider of medical and mental health services to detainees at Lake County.

While at McHenry, Johansen regularly received medication for depression and anxiety. Upon Johansen's arrival at Lake County, Wexford nurse Karen Counley performed an intake mental health assessment. Johansen told Counley that he suffered from sleep apnea, depression, anxiety, and hypertension. He also listed the medications he had been previously prescribed, including citalopram (an antidepressant drug prescribed for depression, anxiety, and panic disorders) and a Xanax derivative. The intake nurse is responsible for beginning the verification process to confirm the medications that an inmate self-reports. Once the medications are verified, a physician can enter an order to dispense those medications. The parties dispute whether Counley made a records request to McHenry to confirm Johansen's medications.[1]

At Lake County, Wexford employees passed through housing units on a daily basis for the "medication pass" or "med pass." During his first couple days at Lake County, Johansen inquired about his depression medications during the med passes, but was not given any. Defendants note that speaking to individuals during the daily med pass was not the appropriate channel for addressing questions or concerns. Instead, inmates were to complete a written request form. However, at least one

---

[1] "Defendants cite to testimony by Defendant Townsend, who was apparently shown a document from McHenry that she identified as an authorization form completed by Counley and signed by Johansen as a release to obtain his records from McHenry. Johansen, however, emphasizes that his medical file includes no such records authorization form. Nor do Defendants cite to the purported authorization form as an exhibit." (Dkt. 109, 4)

2

Defendant admitted that one of the ways medical requests were brought to the attention of nurses was via informal requests made by inmates during med pass.

Johansen submitted a written request on March 21, 2014, stating: "I need my depression medication ASAP—if/when I stop taking it cold turkey, I begin to get [severely] depressed and suicidal. It has been 3 days since my last dose. Please call McHenry County to verify my dosage of medication." This request was forwarded to mental health services. The next day, Defendant Johnson conducted a mental health evaluation of Johansen. On the mental health evaluation form, Johnson marked that Johansen had a history of suicidal behaviors, but added they were "ideations only." She wrote that Johansen was taking citalopram (for depression) and hydroxyzine (for anxiety), that his last use was the previous Wednesday at McHenry, and that his voiced complaint was that he needed his medications. Nonetheless, Johnson determined that Johansen's mood was "fine." Johnson indicated that Johansen should be referred to psychiatry by checking a box at the bottom of the mental health evaluation form. She did not, however, directly contact a psychiatrist regarding Johansen or his medication needs. She testified that when an inmate complained he was not receiving medication, she would typically refer the matter to nursing staff.

On March 25, 2014, Johansen filed a grievance requesting his prescribed medications. According to his grievance, Johansen had made thirteen verbal requests and one written request to have Wexford staff verify his medications with McHenry. He wrote in his grievance that stopping his antidepressant cold turkey causes him to suffer "extreme mood swings," "heightened anxiety," and "thoughts of suicide." He

3

stated he was "beginning to experience these feelings" and that he had expressed these feelings to Johnson. That day, he was placed on suicide watch.

Johnson met with Johansen while he was on suicide watch on March 26. Johnson and Johansen discussed the contents of Johansen's grievance, and Johansen reported his concerns about not receiving his medication. Side effects from withdrawal of citalopram may include dizziness, nausea, vomiting, diarrhea, tremors, lack of sleep, and appetite change. Johnson testified that she was "sure there are" withdrawal symptoms from abruptly stopping antidepressant medications, but she was not aware of any specific symptoms. After determining that Johansen was not suicidal at the time and did not present acute distress, Johnson took Johansen off suicide watch. She also planned to follow up with Johansen within seven days to speak with a nurse regarding his medications. There is no evidence on the record that she did, indeed, speak with a nurse.

Johansen met with Johnson again on March 31, 2014, at which point Johansen told her that he still had not received his medications. Johnson testified that Johansen told her that his lack of medications did not concern him because he was going back to McHenry soon.

It was policy at Lake County that if the mental health screening revealed a history of mental health treatment, medical staff were required to obtain an inmate's mental health treatment records. While Johnson noted Johansen's self-reported medications, she did not verify his medical history, did not obtain his medical and/or mental health records from McHenry, and did not obtain his records from his

outpatient mental health care provider. Johnson did not speak directly to the psychiatrist about getting Johansen his medications.

On April 7, 2014, Johansen left Lake County and returned to McHenry. He received his depression medications within ten hours of returning to McHenry.

Johansen brought suit against various Defendants for his treatment during his detention at Lake County. Against Johnson, Johansen brought a claim for inadequate medical care under § 1983 and the Fourteenth Amendment's Due Process Clause.[2] Both Johansen and Defendant Johnson cross-moved for summary judgment. On February 22, 2019, the Court granted summary judgment against Johnson and in favor of Johansen. (Dkt. 109)

## DISCUSSION

Johnson requests that the Court reconsider its summary judgment ruling pursuant to Federal Rule of Civil Procedure 54(b).[3] A motion to reconsider is appropriate only in limited circumstances, and the movant must establish a manifest error of law or fact or present newly discovered evidence. "A party moving for reconsideration bears a heavy burden." *Saccameno v. Ocwen Loan Servicing, LLC,* 2018 U.S. Dist. LEXIS 38793, at *5 (N.D. Ill. Mar. 9, 2018) (internal citations and

---

[2] As a pretrial detainee, Johansen's claims arise under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishment Clause for convicted prisoners.

[3] Defendant Johnson incorrectly cited to Federal Rule of Civil Procedure 59(e), a fact Plaintiff took great pains to point out. The Court analyzes this issue as if Defendant Johnson had cited the correct rule, given that "the standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b)." *Morningware, Inc. v. Hearthware Home Products, Inc.*, 2011 U.S. Dist. LEXIS 39440, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011).

5

quotations omitted). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (internal citations and quotations omitted).

Johnson asks the Court to reconsider its earlier summary judgment ruling. She argues that the Court misapplied the first prong of *Miranda v. County of Lake* because it evaluated Johnson's conduct under an objective standard. (Dkt. 112, 2-3); 900 F.3d 335 (7th Cir. 2018). Thus, Johnson argues, the Court made a manifest error of law. (Dkt. 112, 2)

The Court based its summary judgment decision on *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), and *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018). In *Kingsley*, the Supreme Court held that a pretrial detainee bringing an excessive force claim did not need to prove that the defendant was subjectively aware that the amount of force being used was unreasonable, but need only show that the defendant's conduct was objectively unreasonable. *Kingsley*, 135 S.Ct. at 2473. Thus, the appropriate standard for a pretrial detainee's excessive force claim is "solely an objective one[,]" as opposed to the more demanding standard for a convicted inmate under the Eighth Amendment. *Kingsley*, 135 S.Ct. at 2473. In *Miranda v. County of Lake*, the Seventh Circuit extended *Kingsley*'s "objective reasonableness" standard to inadequate medical care claims brought by pretrial detainees. 900 F.3d at 353-54 (concluding that "medical-care claims brought by pretrial detainees under the

6

Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*").

In order for a plaintiff to prevail on an inadequate medical care claim under *Miranda*, Plaintiffs must prove that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was objectively unreasonable. *Miranda*, 900 F.3d at 353-54. Under this standard, a pretrial detainee must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 353. As this Court noted in its summary judgment opinion, *Kingsley* and *Miranda* thus shifted the inquiry from whether the defendant was subjectively aware that her conduct was unreasonable to whether the defendant's conduct was objectively unreasonable. *Id.* at 351. "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—*without regard to any subjective belief held by the individual*—whether the response was reasonable." *McCann v. Ogle County, Ill.*, 909 F.3d 881, 886 (7th Cir. 2018) (emphasis added).

In ruling on the cross-motions for summary judgment, the Court cited the key language and cases listed above. Accordingly, the standard enunciated by the Court was correct. The Court went on to apply those standards to the record before it. In evaluating the first prong, the Court concluded:

> As a social worker, Johnson had a duty to take care of Johansen's mental health needs, including evaluating his mental state and ensuring that he was receiving his medications. Johnson was aware of Johansen's numerous requests for his medications and the effects of withdrawal from anti-depressants. She furthermore had ample opportunity to verify

7

> his medications or at least directly contact nursing staff or the psychiatrist to discuss Johansen's specific needs. She did nothing….
>
> Given the gravity of Johansen's condition, his voiced concerns about his mental state, and his multiple requests for his medications, Johnson '*knew or should have known* that the condition exposed an excessive risk to health or safety' and 'failed to act with reasonable care to mitigate the risk.' …

(Dkt. 109, 24-26) (*citing Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (discussing the *Kingsley* standard)) (emphasis added). The Court then addressed the second prong of *Miranda*—whether Johnson's behavior was objectively unreasonable. The Court stated:

> The record reflects that, in Johnson's care, Johansen went at least a week without his psychotropic medications, Johnson knowing full well the effects of not taking those medications…a reasonable social worker would have still ensured that Johansen received his medications he needed to keep his depression and suicidal behavior at bay. Johnson's conduct was objectively unreasonable.

(Dkt. 109, 24-26). The Court thus granted summary judgment in favor of Johansen and against Johnson.

Yet Johnson believes that this Court erred in its application of *Kingsley*, *Miranda*, and *McCann*. Johnson believes the Court applied an objective standard when evaluating Johnson's intentionality under the first prong of *Miranda*, and that the Court should have applied a subjective standard. In support of this argument, Johnson places great emphasis on the Seventh Circuit's statement in *McCann* that "[t]he first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged and 'asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the

consequences of their handling of [plaintiff's] case.'" *McCann*, 909 F.3d at 886. Johnson relies on this sentence to argue that a plaintiff must show that the defendant was "subjectively aware" of the risk to an inmate's health, and that the first step of the inquiry involves a subjective standard. (Dkt. 112, 2-3) Johnson reads too much into this language in *McCann*. The standard for pre-trial detainees is an objective one.

In *McCann*, the Seventh Circuit explained "[a] pretrial detainee 'need only show that the defendant's conduct was *objectively* unreasonable,' without any accompanying requirement to demonstrate, as would be the case in a claim brought under the Eighth Amendment… 'that the defendant was subjectively aware that the amount of force being used was unreasonable.'" *McCann*, 909 F.3d at 886 (citing *Miranda*, 900 F.3d at 351). Although *McCann* notes that some *mens rea* is required for the first prong—something more than mere negligence—it clearly states that a plaintiff need not demonstrate "that the defendant was subjectively aware" of the amount of force used, or harm caused. *McCann*, 909 F.3d at 886. Under *McCann*, the standard for pretrial detainees remains an objective one. *McCann*, 909 F.3d at 886 ("the medical defendants acted purposefully, knowingly, or perhaps even recklessly when considering the consequences of handling [plaintiff's] case.") The Court properly applied this standard in its summary judgment ruling.

In its opinion, the Court addressed the first prong of *Miranda*, finding that the record demonstrated that "Johnson 'knew, or should have known, that the condition posed an excessive risk to health or safety' and 'failed to act with reasonable

9

case to mitigate that risk.'" (Dkt. 109, 25) The Court's reasoning aligns directly with *McCann's* enunciation of the standard; it found an appropriate level of intentionality. The Court perceives no misapprehension or manifest error of law or fact. Accordingly, the Court finds no basis to reconsider its summary judgment ruling.

## **CONCLUSION**

For the reasons discussed above, Johnson's motion for reconsideration [111] is denied.

E N T E R:

Dated: January 27, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge