## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KURT JOHANSEN, | |
| Plaintiff, | |
| v. | Case No. 15-cv-2376 |
| WEXFORD HEALTH SOURCES, *et al.*, | Judge Mary M. Rowland |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has petitioned for attorneys' fees and costs under 42 U.S.C. § 1988, seeking attorneys' fees in the amount of $532,417.50 and costs totaling $7,035.27. Defendants Katie Johnson and Trina Weatherspoon filed objections (Dkt. 167). For the reasons stated below, the Court grants the petition [160] in the amount of $295,321.45 in fees and $3,094.40 in costs.

### I. Legal Standard

"In any action or proceeding to enforce a provision of [section 1983] of this title, …the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "Generally, the prevailing party in a civil rights lawsuit is entitled to an award of attorney's fees." *Capps v. Drake*, 894 F.3d 802, 804 (7th Cir. 2018) (citing 42 U.S.C. § 1988(b)). The size of the fee award "is a function of three numbers: the hours worked, the hourly rate, and any overall adjustments up or down." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017). As the Seventh Circuit has explained:

1

> The district court first calculates the lodestar, which is the hours reasonably expended multiplied by the reasonable hourly rate—and nothing else. The total time should exclude work that was excessive, redundant, or otherwise unnecessary. The lodestar may also take into account factors such as the amount involved and the results obtained, as well as the experience, reputation, and ability of the attorneys. Once the lodestar is calculated, it may be appropriate to adjust it further. While a plaintiff who achieves excellent results should receive the entire lodestar, that sum may be excessive for one who has achieved only partial or limited success.

*Id.* (internal citations and quotation marks omitted). Of the "*Hensley* factors," "'[p]erhaps the most important…is the degree of success on the merits, especially 'where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief.'" *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L.Ed. 2d 40 (1983)). If a "plaintiff prevails on only some of his interrelated claims,…the 'district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (citation omitted).

Federal Rule of Civil Procedure 54(d) provides that unless a federal statute, the Federal Rules, or the Court provides otherwise, costs "should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). Pursuant to 28 U.S.C. § 1920, the Court may tax as costs certain fees, including those for "transcripts necessarily obtained for use in the case" and "for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." The prevailing party is presumptively entitled to costs. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The burden is on the prevailing party to establish that the

potentially recoverable costs it incurred were necessary and reasonable. *Trs. of Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). If the prevailing party satisfies that burden, the burden shifts to the opposing party to show that the costs are inappropriate. *Beamon*, 411 F.3d at 864.

## II. Background

### A. Background of the case[1]

Plaintiff Johansen is a former pretrial detainee who was primarily detained in McHenry County Jail. He brought claims under 42 U.S.C. § 1983 for his treatment during his detention at Lake County Jail. His five-count Amended Complaint, filed December 3, 2015, named thirty-six defendants, including Lake County, Illinois, and two members of the Lake County Sheriff's Department (collectively, the "Lake County Defendants"); and Wexford Health Sources, Inc. ("Wexford") and numerous Wexford employees (collectively, "Wexford Defendants"). Against Katie Johnson, a Wexford social worker, Johansen brought a claim for inadequate medical care under § 1983 and the Fourteenth Amendment's Due Process Clause. Both Johansen and Defendant Johnson cross-moved for summary judgment.

On February 22, 2019, the Court granted summary judgment against Johnson and in favor of Johansen. (Dkt. 109). In that order, the Court also granted summary judgment in favor of Defendants with respect to Townsend, Perez, Dr. Mizuno, and Wexford, and denied both motions for summary judgment with respect to

---

[1] A more fulsome factual and procedural history is described in the Court's February 22, 2019 and January 27, 2020 opinions. (Dkts. 109, 130).

Weatherspoon. Johnson requested reconsideration of the grant of summary judgment against her. The Court denied that request. (Dkt. 130).

A trial date was set in May 2020, but a settlement conference was held and a settlement reached in March 2020. On May 18, 2020, this Court dismissed with prejudice all remaining claims but retained jurisdiction over the issue of Section 1988 fees and costs to counsel for the plaintiff. (Dkt. 155).

**B. Plaintiff's and Defendants' proposals regarding fees**

Because the parties failed to agree on Plaintiff's fees sought pursuant to Local Rule 54.3, the following shows the fees claimed by Plaintiff and the fees Defendants believe should be awarded. (*see* LR 54.3(e) statement (Dkt. 160-3)).[2]

Plaintiff's claimed fees:

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Mark F. Smolens | 394.5 | $600 | $236,700.00 |
| Brian W. Coffman | 240.3 | $475 | $114,142.50 |
| Nicole L. Barkowski | 517.25 | $350 | $181,037.50 |
| Laura Smith | 4.3 | $125 | $537.50 |

Defendants' proposal, *if* Smolens and Barkowski are awarded any fees:

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Mark F. Smolens | 178 | $300 | $53,400.00 |
| Brian W. Coffman | 101 | $250 | $25,250.00 |
| Nicole L. Barkowski | 268.75 | $225 | $60,468.75 |
| Laura Smith | 2.9 | $125 | $362.50 |

---

[2] Plaintiff reduced Coffman's requested rate to $475 since the filing of the LR 54.3(e) statement. (Dkt. 160 at 25).

### III. Analysis

Defendants object to Plaintiff's fee petition on the following grounds: (1) the Mottweiler & Smolens LLP attorneys' fees and costs should not be allowed because the Bankruptcy Court only appointed Coffman Law Offices PC to represent the bankruptcy estate; (2) the hourly rates sought are excessive; and (3) the hours should be reduced because of improper billing, duplicate and excessive time, and time spent on administrative tasks. And while Plaintiff seeks an enhancement of 25% of the total lodestar amount, Defendants contend that a 33% reduction is appropriate. Finally Defendants object to several categories of Plaintiff's requested costs.

Despite courts consistently reiterating that attorney's fees "should not result in a second major litigation" *Hensley*, 461 U.S. at 437; *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011), that is what has happened here. As discussed further below, Plaintiff has sought fees for time that is duplicative and excessive in some instances, but Defendants' objections to nearly all of Plaintiffs' time entries places significant burden on the Court and hampers the Court's ability to evaluate meritorious objections.

### A. Bankruptcy Court Proceedings

Plaintiff filed a bankruptcy petition in October 2015. (*In re Johansen*, Case No. 15-82635). Defendants argue that the only firm the Bankruptcy Court approved to represent the Estate was Coffman Law Offices. As a result, they contend, the attorneys of Mottweiler & Smolens had only a "volunteer" relationship with the

Bankruptcy Estate and cannot seek any compensation for their work in this case. As such the total award, according to Defendants, would be $25,250.

Defendants' arguments to deny Mottweiler & Smolens LLP any recovery in this case are unpersuasive. First, the day after Coffman filed this lawsuit on behalf of Plaintiff on March 19, 2015, Smolens and Barkowski filed their appearances as counsel for Plaintiff. (Dkts. 4, 6). Thus like Coffman, Smolens and Barkowski have represented Plaintiff for five years. Seven months after filing this suit, Johansen and his wife filed their Chapter 7 bankruptcy petition. When Plaintiff and his wife filed for Chapter 7, the Bankruptcy Trustee's "motion to employee attorneys" stated that "to perform his duties as Trustee," the Trustee sought to retain Coffman Law Offices "as counsel for the Trustee." (Dkt. 167-1). The motion further stated that the attorneys sought compensation in accordance with the contract for legal services, attached to the motion. *Id.* That retainer agreement was signed by Plaintiff, Coffman and Smolens, and appointed and retained "Coffman Law Offices P.C. *and* attorney Mark Smolens" as Plaintiff's counsel. (Dkt. 167-2, emphasis added). The bankruptcy judge, having been presented the retainer agreement, granted the Trustee's motion on January 13, 2016.

Despite this record, Defendants argue that Mottweiler & Smolens LLP was in a volunteer relationship with the bankruptcy estate. (Dkt. 167 at 9, citing Fed. R. Bankr. P. 2014(a) and Section 327(a)). Defendants unpersuasively rely on cases concerning reimbursement from the Bankruptcy Estate, not § 1988 fees. (Dkt. 167 at 10). There is no basis to conclude that Mottweiler & Smolens LLP should not be

6

compensated for the work performed in this matter. The Bankruptcy Trustee's approval of the settlement bolsters this conclusion.

In April 2020, the Trustee's motion to approve the settlement stated that the issue of the award of attorneys' fees to the Bankruptcy Estate's special counsel, Brian Coffman, "will be reserved for further order of the [U.S. District] court. . . and will no longer [be] part of this bankruptcy proceeding." (Dkt. 167-4). The Bankruptcy Court's order approving the settlement stated that the attorneys' fees to "the Bankruptcy Estate's special counsel, Brian Coffman, *et al.*, if any, will be determined by the U.S. District Court for the Northern District of Illinois, Eastern Division." (Dkt. 167-5, emphasis added).

Thus both the Trustee's motion and the Bankruptcy Court's order (1) acknowledged more attorneys were involved than Mr. Coffman; and, in any event, (2) left the matter of awarding reasonable attorneys' fees wholly to this Court. Nothing in the parties' settlement agreement or the Bankruptcy Court's order confined this Court's determination of a reasonable fee award under § 1988 to Mr. Coffman only.[3] In light of all of these factors and the well-settled authority and discretion vested in this Court to determine fees in civil rights cases (42 U.S.C. § 1988(b); *see Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649 (7th Cir. 2007)), the Court finds Mottweiler & Smolens LLP is eligible for reasonable fees and costs in this matter.

---

[3] To the contrary, Johansen's release contained in the settlement agreement, presumably reviewed if not drafted by Defendants, dismissed with prejudice the action, save the Section 1988 fees and costs to "Plaintiff's *attorneys*" (plural), to be decided by this Court. (Dkt. 160-9 at 5). This document should have been filed in the record under seal and the Court orders it removed from the docket and placed in the record under seal.

## B. Defendants' Objections to Hourly Rates

The hourly rate component of the lodestar "must be based on the market rate for the attorney's work." *Gautreaux*, 491 F.3d at 659. "The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id. See also Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 645–46 (7th Cir. 2016) (reference point is "hourly rates that attorneys of comparable skill, experience, and reputations charge for similar work.").[4]

A court considers the following factors in setting a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3.

### 1. *Mark Smolens*

Mr. Smolens seeks a fee of $600 per hour. Defendants argue that this request is excessive and assert an hourly rate of $300 is reasonable. The Court determines that a fee of $475 per hour in this case is reasonable for Mr. Smolens.

The attorneys here largely employ contingent fee agreements and have not had an adjudicated fee petition before. So "[t]he next best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community

---

[4] Current rates are determined at the time the petition is filed. *Adamik v. Motyka*, 2018 WL 3574751, at *4 (N.D. Ill. July 25, 2018).

charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). In support of his requested rate, Mr. Smolens relies on his own affidavit, the affidavit of attorney Kenneth Flaxman, and affidavits filed in *Capps v. Drake*, 14-cv-441.[5]

As Mr. Smolens states in his affidavit, he has been a practicing litigator since 1985. (Smolens Aff. (Dkt. 160-3)). In 1988 he began representing municipal defendants in § 1983 civil rights and Title VII discrimination cases. *Id*. In 2010 he started his solo practice focused on police misconduct and other civil rights litigation. *Id*. A majority of his current practice involves working on civil rights cases on a contingent fee basis. *Id*. Since 1988 he has appeared in over 200 cases in the Northern District of Illinois, all but one was classified as involving "civil rights" claims. *Id*.

In Mr. Flaxman's affidavit, Mr. Flaxman explains that he has been practicing since 1972, focused on federal civil rights cases, has participated in about 700 federal rights cases in this district, and about 200 appeals in the Seventh Circuit.[6] (Flaxman Aff. (Dkt. 160-5). Mr. Flaxman states that his current rate is $750 per hour, though his litigated fee award has been lower. (*Id*. pp. 9-10). *See e.g. Capps v. Drake*, 2019

---

[5] The Court agrees with Defendants' objections to Plaintiff's reliance on the affidavits of Dana Kurtz and H. Candace Gorman from the *Capps* case. Where an attorney relies on the rates of similar attorneys doing similar work, the Seventh Circuit has "indicated a preference for third party affidavits that attest to the billing rates of comparable attorneys." *Pickett*, 664 F.3d at 640. However Plaintiff cites no authority supporting reliance on affidavits submitted in a *different* case in support of *different* attorneys. The Court disregards these affidavits.

[6] The Court agrees with Defendants' objections to Mr. Flaxman's affidavit to the extent he opines about the reasonableness of the time expended or the rates charged. That is for the Court to decide.

9

WL 859779 (S.D.Ill. Feb. 22, 2019) (awarding Mr. Flaxman hourly rate of $625); *Flora v. Dart*, 2018 WL 2765919 (N.D. Ill. June 9, 2018) ($575 per hour). Mr. Smolens concedes that Mr. Flaxman is more experienced than him. (Dkt. 160 at 24). And as Defendants point out, by comparison, Jonathan Loevy, a "top tier of civil rights trial attorney[]" in Chicago (*Awalt v. Marketti*, 2018 WL 2332072, at *3 (N.D. Ill. May 23, 2018)), was awarded $550 per hour in *Fields v. City of Chicago*, 2018 WL 253716, at *4 (N.D. Ill. 2018). Further, as Defendants note, Mr. Smolens does not claim that his employment was precluded due to accepting this case.

The Court finds that while Mr. Smolens' prior civil rights experience was more focused on false arrest and excessive force cases for example than inadequate medical care claims, Mr. Smolens still had the "skill requisite to perform the legal service properly" in this case. *Hensley*, 461 U.S. at 430 n. 3. Defendants argue, relying on *Cooper v. Casey,* that Mr. Smolens has not shown how his civil rights litigation experience translates to the particular claim in this case. In *Cooper*, however, the Seventh Circuit discussed fees for an attorney who was not a civil rights litigator at all. 97 F.3d 914, 920 (7th Cir. 1996). Here Mr. Smolens has substantial civil rights litigation experience, and a lack of specialization in the narrow area of inadequate medical care for detainees does not render that experience irrelevant. However, given the hourly rates awarded to other practitioners in this field with even greater experience, his requested rate of $600 is not appropriate.

For these reasons the Court will award Mr. Smolens a fee of $475 per hour.

### 2. Brian Coffman

Mr. Coffman seeks a fee of $475 per hour. Defendants contend that this is excessive and that an hourly rate of $250 is appropriate. The Court determines that a fee of $390 per hour in this case is reasonable for Mr. Coffman.

In support of his rate, Mr. Coffman submitted his own affidavit. (Coffman Aff. Dkt. 160-7). "While an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiffs' burden." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000). Thus the Court will not rely solely on Mr. Coffman's own affidavit but will also consider Mr. Smolen's affidavit describing his experience working with Mr. Coffman, and the rates awarded other attorneys with more experience.

Mr. Coffman began practicing law in 2005 as a litigation associate at a law firm. (Coffman Aff.). In 2010, he opened Coffman Law Offices, P.C. and his practice is solely focused on plaintiff personal injury cases. *Id.* In 2013, he began partnering with Mottweiler & Smolens, LLP to work on §1983 police misconduct cases and civil rights violations in the jail setting. *Id.* This experience and Mr. Coffman's background in personal injury cases are relevant to the inadequate medical care claim in this case.[7] At the same time, his affidavit shows that he has considerably less experience than Mr. Flaxman and less experience than Mr. Smolens. Like Mr. Smolens, Mr. Coffman

---

[7] Considering the *Hensley* factors of the nature and length of the professional relationship with the client, the skill required, and the attorney's reputation and ability, the Court also notes that Coffman was specifically appointed by the Bankruptcy Court to represent the merits of this case.

does not claim that his employment was precluded due to accepting this case. Further, Plaintiff's reliance on *Reid v. Unilever United States, Inc.*, which Plaintiff recognizes is a consumer class action, does not support awarding Mr. Coffman his full requested rate in this case. 2015 WL 3653318 (N.D. Ill. June 10, 2015). *See e.g. Fields*, 2018 WL 253716, at *3 (disregarding affidavit about rates for attorneys in commercial litigation).

For all of these reasons, the Court finds of $390 per hour to be a reasonable rate for Mr. Coffman in this case.

### 3. Nicole L. Barkowski

Ms. Barkowski seeks a fee of $350 per hour. Defendants argue that Ms. Barkowski's hourly rate is unsupported and a rate of $225 is appropriate. The Court determines that a fee of $310 per hour in this case is reasonable for Ms. Barkowski.

Ms. Barkowski submitted her own affidavit which states that she graduated law school in 2008. (Barkowski Aff., Dkt. 160-4). She began working with Richard R. Mottweiler in the spring of 2009, assisting him with his criminal practice. *Id*. In 2012 she began concentrating almost exclusively in § 1983 police misconduct cases and civil rights violations in the jail setting. *Id*.

Ms. Barkowski did substantial and substantive work in this case. The Court considers the time, labor and skill required to work on this case and the fact that Ms. Barkowski did a significant portion of the work required to prosecute Plaintiff's claim. However some reduction from her requested rate is warranted. She does not claim that her employment was precluded due to accepting this case. Given the rates the

Court has found reasonable for Mr. Smolens and Mr. Coffman and a comparison of their experiences on the whole, a $310 hourly rate is reasonable for Ms. Barkowski. The first three years of her practice was assisting Mr. Mottweiler's criminal practice so the Court considers most relevant here her experience starting in 2012 working on Section 1983 cases. This rate is also on par with other recent civil rights litigation cases. *See Fields*, 2018 WL 253716, at *3 (attorneys with about 8 years of litigation experience awarded $325); *Adamik*, 2018 WL 3574751, at *4 (awarding $310 as hourly rate to litigator with five years of experience who did substantial work on case).[8]

Finally, Defendants do not challenge paralegal Smith's rate and the Court finds it reasonable. Although Defendants do not discuss her hours in their response brief, the objections in their objection chart mainly focus on Ms. Smith doing administrative tasks. While some could have been done by "an employee at the next rung lower on the pay-scale ladder" *Spegon*, 175 F.3d at 553, some involved corresponding with attorneys or preparing notices of deposition. And considering the size of Mr. Coffman's practice, it was reasonable to rely on Ms. Smith to do these tasks.

## C. Defendants' Objections to Hours

### 1. Specific line items not eligible for compensation

Defendants object that Plaintiff's time records were not generated contemporaneously. Mr. Smolens explained the billing procedure at his office as

---

[8] In *Fields*, the two attorneys with 8 years of experience had served as trial counsel or primary/trial attorney in prior cases. While Ms. Barkowski's experience is substantial, she does not state that she has experience serving as lead or primary trial counsel.

recording time, by hand, on a weekly diary, "in order to provide an ability to recall." (*see* Dkt. 160-3 at ¶34). Then in order to prepare the billing record for submission, counsel reviewed correspondence, pleadings and the weekly diary. Contemporaneous timekeeping is preferred but not required. *See Douglas v. W. Union Co*., 328 F.R.D. 204, 222 (N.D. Ill. 2018) (contemporaneous time keeping preferred but not mandatory); *compare Harper v. City of Chicago Heights*, 2002 WL 31010819, at \*3 (N.D. Ill. Sept. 6, 2002) (noting that substantially reconstructed billing records may satisfy obligation to keep contemporaneous records). Defendants object to the time counsel spent compiling or recreating time entries.

Plaintiff cites *Delgado v. Mak* in which the court noted the well-settled principle that if "a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable fee for the time expended in preparing and litigating the fee petition." 2009 U.S. Dist. LEXIS 131241, at \*2 (N.D. Ill. Apr. 23, 2009) (citations omitted). However, time spent compiling or reconstructing time records after-the-fact because counsel does not keep contemporaneous records is different. Defendants identify 63 hours of Plaintiff's counsel "itemizing" or "compiling" time records. (Dkt. 167 at 26). And Plaintiff maintains that he has "*not yet* sought compensation for litigating this fee petition." (Dkt. 168 at 11, emphasis added). The Court will reduce the requested fees by 63 hours on this basis. Because it is not always clear in the time log (Dkt. 160-2) specifically how much each attorney spent on the itemizing and recreating time records, the Court will reduce Mr. Smolens' time and Ms. Barkowski's time each by 31.5.

The Court also agrees with Defendants that the time spent on Plaintiff's default motion and the time spent on Plaintiff's motion for discovery sanctions, both of which were denied, should not be awarded. (*see* Dkts. 21, 59). For the default motion, the Court will remove 5.75 hours from Smolens' time, 1 from Barkowski, and .3 from Coffman. For the sanctions motion, the Court will remove 6 hours of time from Smolens and 8.75 hours from Barkowski.

### 2. *Percentage reduction for duplicative and excessive time and administrative tasks*

Defendants raise a number of additional objections to the fee petition based on vague and block billing, fees sought for administrative tasks, and duplicative and excessive time spent. Having reviewed the two separate time logs (submitted by Mr. Coffman and the other by Mr. Smolens and Ms. Barkowski) and Defendants' objections to specific entries (Dkt. 167-10), the Court agrees with some but not all of Defendants' objections. However instead of a line-by-line approach to Defendants' remaining objections, the Court will apply an across-the-board percentage reduction to the overall hours to account for duplicate and excessive billing and fees sought for administrative tasks. This approach is appropriate particularly considering the age of this case, the voluminous time entries submitted, and the challenge of scrutinizing the many entries. *See Fox v. Vice*, 563 U.S. 826, 838, 131 S.Ct. 2205 (2011) ("[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."); *Harper*, 223 F.3d at 605 ("when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries

or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."); *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010) ("line-by-line review of the bills to assess the charges for reasonableness" not required). *See also Smith v. Rosebud Farm, Inc.*, 2018 WL 4030591, at *5 (N.D. Ill. Aug. 23, 2018) (applying "hybrid approach" by striking some entries clearly not recoverable and then reducing hours by a reasonable percentage based on excessive billing and errors in billing records); *Fields*, 2018 WL 253716, at *9 (applying percentage reduction); *Envirogen Techs., Inc. v. Maxim Constr. Corp., Inc.*, 2017 WL 5904663, at *6 (N.D. Ill. Jan. 24, 2017) (applying across-the-board reduction of 15% in the number of recoverable hours).

First the Court agrees with Defendants' objection to the request for compensation for administrative and clerical tasks. Such tasks which are not compensable include "organizing file folders, preparing documents, copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters." *Montanez v. Chicago Police Officers Fico (Star No. 6284), Simon (Star No. 16497)*, 931 F. Supp. 2d 869, 881 (N.D. Ill. 2013), aff'd sub nom. *Montanez*, 755 F.3d 547 (internal citation and quotations omitted). *See also Spegon*, 175 F.3d at 553 ("[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance."). There are a number of entries for clerical tasks. (e.g. "Review and scan documents obtained from client; conf with NB re contents." (Dkt.

160-2, p. 1); e-filing attorney appearance (Dkt. 160-6, p.3). *See e.g. Lee v. City of Chicago*, 2008 WL 5377798, at \*3 (N.D. Ill. Dec. 18, 2008) (scanning documents was non-compensable clerical task).

As to Defendants' objection to the block billing and to vague entries, the Court does not find the block billing objectionable. The Court also does not find Mr. Coffman's entries to be vague—some are rather detailed. Mr. Smolens and Ms. Barkowski's entries are, at times, vague. But of greater concern to the Court is the presence of duplicate and excessive fee entries. Courts must "scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009). Defendants argue that the billing records in this case demonstrate a significant amount of duplication, overlapped and excessive efforts. They provide examples such as instances where multiple attorneys seek fees for reviewing the same scheduling emails or correspondence of a routine nature or all three attorneys spending significant time reviewing the same discovery responses. (Dkt. 167 at 28-31). For example both Coffman and Barkowski spent a significant amount of time reviewing the same deposition transcripts. (Dkt. 167-10, p.14). Other examples are Smolens and Barkowski spending time reviewing the already-filed complaint on March 19, 2015, or Mr. Coffman spending an excessive amount of time reviewing defense counsel's appearances on the docket. (Dkt. 160-2, p. 2; Dkt. 160-6).

The Court understands the staffing of this case given the different backgrounds and experience of each attorney, and appreciates that Ms. Barkowski performed a

17

significant portion of the work given that her requested rate is lower than the other two attorneys. (Dkt. 160-3 at 17). At the same time, a review of the time logs does show duplicative or excessive efforts. This case did not go to trial, involved a single plaintiff, and was not overly complex. *Cf. Fields*, 2018 WL 253716, at *8 (describing factors that showed case was highly complex including involving two trials and required attorneys to master an extensive factual record consisting of two state court criminal trials and extensive federal criminal proceedings).

Therefore, the Court finds that an overall reduction of 15% is appropriate. Below is the lodestar calculation, subtracting specific hours discussed in Sections III.C.1 and III.C.1, and applying the 15% reduction to each attorneys' total hours.

### *Lodestar Calculation*

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Mark F. Smolens | 298.56 | $475 | $141,816.00 |
| Brian W. Coffman | 204.25 | $390 | $79,657.50 |
| Nicole L. Barkowski | 404.6 | $310 | $125,426.00 |
| Laura Smith | 4.3 | $125 | $537.50 |

*Total* = $347,437.00

### D. Enhancement or Reduction

There is "a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett*, 664 F.3d at 639 (citations omitted). However, if a "plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. "[T]he

most critical factor is the degree of success obtained." *Id.* "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *City of Riverside v. Rivera*, 477 U.S. 561, 575, 106 S. Ct. 2686, 2695 (1986). Indeed the Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages" but still stressed that courts should consider "proportionality factors in exercising its discretion in fashioning a reasonable attorney's fee." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (explaining that there may have been good cause for fee request seven times the amount of damages). "Claim counting" is not permitted so the court considers Plaintiff's success in light of the litigation as a whole. *See Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 689 (N.D. Ill. 2012).

Plaintiff requests a multiplier of twenty-five per cent (25%) based on the "extraordinary result" in this case. (Dkt. 168 at 15). The result for Plaintiff was good but considering the case as a whole, cannot be characterized as "excellent" (justifying the full Lodestar) or "exceptional" (justifying an enhancement). *See Hensley*, 461 U.S. at 435 (exceptional success may justify an enhanced award); *Cf. Delgado v. Mak*, 2009 WL 211862, at *3 (N.D. Ill. Jan. 29, 2009) (after hotly contested five-day trial in § 1983 case where jury found for plaintiff on some but not all of his claims, six-figure verdict for plaintiff showed plaintiff's degree of success was excellent, though not "exceptional," warranting full fee but not enhancement).

This case spanned more than five years, with Plaintiff ultimately settling his claim against Weatherspoon and Johnson. Of significance was Plaintiff securing summary judgment on liability in his favor. It cannot be disputed that is rare for a pretrial detainee alleging inadequate medical care to be awarded summary judgment in his favor. In fact, Johnson and Weatherspoon filed a motion for summary judgment asserting their right to a ruling as a matter of law on liability. (Dkt. 84). Instead, the Court entered judgment *against* Johnson. (Dkt. 109). While the amount of the settlement is modest, it was far from insignificant for a detainee in a medical care case. Moreover, Defendants spending approximately $130,000 defending this case (Dkt. 167 at 32) was not insignificant and Plaintiff's counsel's comparatively larger fees are not surprising. *See Delgado*, 2009 WL 211862, at *5 ("many courts have remarked that [u]sually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant") (cleaned up). And as Plaintiff points out, Defendants had multiple opportunities to settle this case. *See City of Riverside*, 477 U.S. at 581 (defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (internal citation and quotations omitted).

Plaintiff brought five claims, denial of medical care against the individual defendants, failure to intervene against the individual defendants, *Monell* claims against two individual defendants and against Wexford, and a state law claim for intentional infliction of emotional distress. (Dkt. 33). The Court agrees with Plaintiff that much of the work was interrelated, even if Plaintiff did not prevail on all of his

claims or against all Defendants. In the end, Plaintiff prevailed on the "primary aim in the litigation" (*Dominguez*, 897 F. Supp. 2d at 690)—establishing a constitutional violation based on inadequate medical care. The public interest factor here is significant. *See Ratliff v. City of Chicago*, 2013 WL 3418070, at *2 (N.D. Ill. July 8, 2013); *Fox*, 563 U.S. at 833 ("When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority.").

Although Defendants do not dispute that Plaintiff is the "prevailing" party, they contend that a 33% reduction is appropriate in this case. The Court agrees that a reduction is warranted, though less than 33%. The constitutional right at issue was undeniably important. Still this was a single-plaintiff case based on events occurring over a less-than two-month period. Plaintiff sued 30 defendants, and after dismissal of a number of them, the Court awarded summary judgment to 4 of the 6 remaining defendants, finding in their favor on most of Plaintiff's claims including the *Monell* claim. Plaintiff reached a settlement with the two remaining defendants, Johnson and Weatherspoon. Raising a "red flag" that the Court cannot ignore (*Anderson*, 578 F.3d at 546) is the fact that the amount of fees Plaintiff seeks, even before his requested enhancement, is more than 25 times the settlement amount he received.

Plaintiff was successful on a portion of his claim, but his success was limited and some reduction is warranted. Exercising its discretion to make an "equitable judgment" (*Hensley*, 461 U.S. at 437), the Court finds appropriate a reduction to the lodestar by an additional 15%. *See e.g. Adamik,* 2018 WL 3574751, at *12 (lodestar

reduction of 25% appropriate to account for the degree of success achieved)*;* *Sughayyer v. City of Chicago*, 2012 WL 2359065 (N.D.Ill. 2012) (reducing the lodestar by 45% for a total fee $178,000 where the plaintiff recovered $13,000 after a jury trial); *Tauber v. City of Chicago*, 33 F.Supp.2d 699, 702 (N.D.Ill.1999) (reducing lodestar by 40% based on lack of success of total claims). A greater reduction is not warranted because the Court already reduced the Lodestar by 15% as explained above to account for some excessive and duplicative billing and fees sought for administrative tasks. The additional 15% reduction fairly accounts for Plaintiff's good but limited success in this case.

The Court will therefore reduce the lodestar by an additional 15%. The total amount after this reduction comes to $295,321.45.

### E. Costs

Plaintiff seeks a total of $7,035.27 in costs. Defendants argue that the costs sought are either disallowed or requested without support. Plaintiff has the burden of showing that its claimed costs were reasonable and necessary. *Beamon*, 411 F.3d at 864; *Chi. Plastering Inst. Pension Trust*, 570 F.3d at 906.

Defendants first object to the following costs (and Plaintiff does not address any of these objections in his reply brief): for Rule 4 waivers, service fees, and color copies of deposition exhibits. The Court will not allow those costs. Mr. Coffman's travel to Texas to take Mr. Mohammed's deposition also will not be allowed. While a court may award costs to reimburse *witnesses* for their reasonable travel (*see Majeske v. City of Chicago*, 218 F.3d 816, 825–26 (7th Cir. 2000)), "[a]ttorney travel expenses to attend

a deposition are *not* recoverable as costs." *Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 983 (N.D. Ill. 2003) (emphasis added). The $1,022.41 flight for Mr. Coffman will not be allowed.

The Court has reviewed Defendants' other objections and agrees with all of them. The following table shows the costs that will be awarded or not[9]:

*Costs*

| | |
|---|---|
| New Lawsuit Filing Fee – Northern District of Illinois (BC) | 400 |
| USPS Attempt to serve Rule 4 Waivers & Complaint (BC) | 0 |
| Judicial Attorney Services, Inc. – Service of subpoena on Lake County | 0 |
| Fedex Officer - Color Copies of Deposition Exhibits | 0 |
| Depo International - Deposition Appearance Fee - Eric Mizuno | 110 |
| L&L Reporting Service, Inc. – Deposition Appearance & Transcript Fee – Trina Weatherspoon & Katie Johnson | 808.3 |
| L&L Reporting Service, Inc. – Court Reporter Attendance Fee – Dep of Laticia Perez | 110 |
| L&L Reporting Service, Inc. – Deposition Appearance &Transcript Fee – Lt. Nicholas Kalfas | 542.9 |
| L&L Reporting Service, Inc. – Court Reporter Attendance Fee – Dep of Jennifer Bibbiano | 110 |
| American Airlines – Flight to attend Deposition | 0 |
| Bruce D. Graham – Special Process Server | 400 |
| McCorkle Litigation Services, Inc. – Deposition Transcript Copying Fee – Kurt Johansen | 241.2 |
| MBA Reporting Services, Inc. – Deposition Transcript Copying Fee- Mohammed | 284.7 |
| L&L Reporting Service, Inc. – Deposition Transcript Fee –Bibbiano | 87.3 |
| *Total* | $3094.4 |

Accordingly the total costs to be awarded are $3,094.40.

---

[9] The Court used plaintiff's counsel's itemized costs table in Exhibit 8 (Dkt. 160-8). It is unclear to the Court why the total in that table is $6,349.27 whereas the petition seeks $7,035.27. Neither party addresses the discrepancy.

## IV. Conclusion

For the foregoing reasons, the Court grants Plaintiff's petition [160] in part and awards $295,321.45 in attorney's fees and $3,094.40 in costs, for a total amount of $298,415.85, against Defendants Katie Johnson and Trina Weatherspoon. Apportioned between Plaintiff's counsels' firms the attorney fee award is $68,165.75 for Coffman Law Offices PC, and $227,155.70 for Mottweiler & Smolens LLP.

E N T E R:

Dated: March 23, 2021

_Mary M Rowland_
_____
MARY M. ROWLAND
United States District Judge